# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **MARTIN D. MORRIS,** | ) | **CASE NO. 5:07CV1870** |
| | ) | |
| **PETITIONER,** | ) | **JUDGE CHRIS BOYKO** |
| | ) | |
| **v.** | ) | **MAGISTRATE GREG WHITE** |
| | ) | |
| **MICHELE EBERLIN,** | ) | |
| | ) | **REPORT &** |
| **RESPONDENT.** | ) | **RECOMMENDATION** |

On June 22, 2007, Martin D. Morris, Petitioner, *pro se*, filed in this Court a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  (Doc. No. 1.)  He challenges the constitutionality of his conviction in the case of *State v. Morris*, Stark County Court of Common Pleas Case No. 2004CR0434.  This matter was referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636 and Local Rule 72.2.  On February 14, 2008, Respondent filed her Answer/Return of Writ. (Doc. No. 14.)  Petitioner did not file a Traverse.  For the reasons set forth in detail below, the Magistrate Judge respectfully recommends Morris' petition be denied.

## I.  Facts

The Stark County Court of Appeals, Fifth Appellate District of Ohio, set forth the facts underlying Petitioner's conviction as follows:

> On March 7, 2004, Martin Morris, Sr. ("Morris") returned to his home after attending calling hours.  When Morris arrived home, appellant's girlfriend, Angela Godsey, advised Morris appellant was in the other room, sleeping.  Morris instructed Godsey to wake appellant because the two could no longer stay at his apartment.  Godsey went into the bedroom and returned to the living room a few minutes later.  Morris asked her if she told appellant they needed to leave.  Godsey advised him she had, but noted appellant had gone back to sleep.  Shortly thereafter, appellant came out of the bedroom, screaming, and raving and ranting.  Morris ordered him out of the apartment.  Appellant punched Morris in the face, and knocked him back against a wall.  Morris pushed appellant back, but appellant flipped

Morris upside down and threw him onto the floor.  Appellant continued to
beat Morris.

Godsey exited the apartment and ran around the corner to get
appellant's cousins, Jason and Scott Krach as well as their friend Jason
Philips, to break up the fight.  When Philips, Jason Krach and Scott Krach
arrived, they found Morris, with a bloody lip, lying on the ground.
Appellant was standing in the room, screaming at Morris.  Jason Krach and
Jason Philips held appellant back and pushed him outside.  Trying to get
back into the apartment, appellant beat on the door and broke the glass
window.  Morris retreated to his bedroom and returned with a weapon.  By
that point, appellant was in the yard, but refused to leave.  Morris fired into
the ground.  Appellant subsequently left the premises.

Officer Kevin Sedares of the Canton Police Department arrived
with his partner, Officer Overdorf, to assist the officers who originally had
been dispatched to the scene.  Officer Sedares spoke with Morris, whose
face and shirt were bloodied.  Morris was transported to the hospital where
he was treated for a bruised kidney and received stitches in his mouth.  As a
result of the altercation, Morris' dentures were broken.

After hearing all the evidence and deliberations, the jury found
appellant guilty of one count of domestic violence.  The trial court
proceeded immediately to sentencing.  The trial court imposed the
maximum sentence of five years on appellant, noting appellant's extremely
long history of violent offenses and appellant's lack of amenability to
community control sanctions.  The trial court further added, although it did
not believe that the instant assault upon his father was the worst form of the
offense, the trial court did find appellant posed the greatest likelihood of
recidivism.  The trial court memorialized the conviction and sentence via
Entry filed June 29, 2004.

(Exh. 5.)

## II.  Procedural History

### A.  Underlying Case and Direct Appeal

Petitioner was indicted on one count of Domestic Violence.  Through counsel, he

entered a plea of not guilty.  After a jury trial, he was convicted.  On June 23, 2004, he

was sentenced to a five-year term of imprisonment.  (Exh. 2.)

Petitioner, through trial counsel, filed a timely appeal to the Fifth District Court of

Appeals, Stark County and presented the following assignments of error:

Assignment of Error No. 1.

The trial court erred in denying Defendant's Motion to Disqualify
the Prosecutor because of a conflict on [sic] interest the Prosecutor had by

2

virtue of her representation at [sic] a witness and her non-disclosure of that
fact to the Defendant of [sic] Defendant's Counsel prior to trial.

Assignment of Error No. 2.

 The Trial Court erred by sentencing the Defendant to a maximum
sentence when the Court found that this was not the worst form of the
offense.

Assignment of Error No. 3.

 The Trial Court erred by not allowing the Defendant's Counsel to
fully examine witnesses and by allowing in hear-say testimony over
Defense Counsel's objections.

(Exh. 3.)  On September 19, 2005, the Court of Appeals affirmed the judgment of the trial

court.  (Exh.5.)

Next, Petitioner, represented by the Ohio Public Defender's Office, filed a timely

appeal to the Ohio Supreme Court.  The Petitioner set forth the following Proposition of

Law:

 A trial court may not impose a maximum sentence upon an offender pursuant to
R.C. 2929.14( C) when the trial court has explicitly found that the defendant did
not commit the worst form of the offense and the trial court does not articulate
reasons for finding that the defendant poses the greatest likelihood of committing
future crimes.

(Exh. 6.)  On February 8, 2006, the Ohio Supreme Court denied leave to appeal and

dismissed the case finding that it did not involve any substantial constitutional question.

(Exh. 8.)

**B.  Rule 26(B) Application to Reopen Appeal**

Meanwhile, on December 20, 2005, Petitioner, represented by the Ohio Public

Defender's Office, filed an application to reopen his appeal pursuant to App. R. 26(B),

claiming ineffective assistance of appellate counsel and raising the following assignments

of error:

Assignment of Error 1.

 Appellant was denied the effective assistance of trial counsel, a
right secured by the Sixth and Fourteenth Amendments to the United States
Constitution and Sections 10 and 16, Article I of the Ohio Constitution,

when counsel failed to competently cross-examine the alleged victim and
when counsel failed to object to a critical jury instruction.

Assignment of Error 2.

    The trial court committed plain error in its instructions to the jury
on the law of self-defense, thereby depriving Appellant of his right to a fair
trial before a properly instructed jury, and his right to due process of law, as
guaranteed by the Fifth and Fourteenth Amendments to the United States
Constitution, and Section 16, Article I of the Ohio Constitution.

(Exh. 9.)  On March 9, 2006, the Appellate Court denied Petitioner's Application for

Reopening finding that trial counsel was not ineffective.  Also, the Court found that the

trial court's jury instruction on self-defense was appropriate.  Lastly, it found that the

evidence of Petitioner's guilt was overwhelming.  (Exh. 11.)

On April 24, 2006, Petitioner, through the Ohio Public Defender's Office, filed an

appeal to the Ohio Supreme Court.  Petitioner set forth the following propositions of law:

    Proposition of Law I.
    When appellate counsel fails to raise meritorious issues during the
course of a criminal defendant's one and only direct appeal, appellate
counsel provides constitutionally ineffective assistance of counsel, and the
defendant is entitled to a new direct appeal.  Sixth and Fourteenth
Amendments, United States Constitution; Sections 10 and 16, Article I,
Ohio Constitution.

    Proposition of Law II.
    A defendant is denied effective assistance of counsel when trial
counsel fails to object to erroneous jury instructions and when trial counsel
is unable to properly present evidence that impeaches the prosecution's
witnesses.  Sixth and Fourteenth Amendments, United States Constitution;
Section 10 and 16, Article I, Ohio Constitution.

On July 5, 2006, the Ohio Supreme Court dismissed the appeal again finding that it

did not involve any substantial constitutional question.  (Exh. 14.)

**C.  Federal Habeas Corpus**

On June 22, 2007, Petitioner, *pro se*, filed the instant petition for writ of habeas

corpus in which he presented the following grounds for relief:

    Ground One.
    Petitioner has been denied the effective assistance of counsel on his direct appeal;
a violation of his Sixth Amendment rights.  Counsel failed to make issue of faulty
jury instructions which further violated Petitioner's Fourteenth Amendment rights.

4

Ground Two.
Petitioner's Sixth and Fifth Amendment rights have been violated because the trial
court arbitrarily excluded critical testimony.

Ground Three.
Petitioner suffered Constitutional violations of the Fourteenth, Sixth, and Fifth
Amendment rights when trial counsel refused to allow him to testify during his
trial.

### III.  Exhaustion and Procedural Default

**A.    Exhaustion Standard**

State prisoners must exhaust their state remedies prior to raising claims in federal
habeas corpus proceedings.  *See* 28 U.S.C. § 2254(b),( c).  This requirement is satisfied
"when the highest court in the state in which the petitioner was convicted has been given a
full and fair opportunity to rule on the petitioner's claims."  *Manning v. Alexander*, 912
F.2d 878, 881 (6th Cir. 1990).  However, if relief is no longer available in state court,
exhaustion can be rendered moot: "If no remedy exists, and the substance of a claim has
not been presented to the state courts, no exhaustion problem exists; rather, it is a problem
of determining whether cause and prejudice exist to excuse the failure to present the claim
in the state courts."  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *see Buell v. Mitchell*,
274 F.3d 347, 349 (6th Cir. 2001).

**B.    Procedural Default Standard**

Federal courts will not consider the merits of procedurally defaulted claims, unless
the petitioner demonstrates cause for the default and prejudice resulting therefrom, or
where failure to review the claim would result in a fundamental miscarriage of justice.
*See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir.2006) (*citing Wainwright v. Sykes*,
433 U.S. 72, 87 (1977)).  A claim may become procedurally defaulted in two ways. *Id*.
First, a petitioner may procedurally default a claim by failing to comply with state
procedural rules in presenting his claim to the appropriate state court.  *Id*.; *see also*
*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply

5

with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[1] *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise a claim in state court and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).  If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted. *Engle v. Isaac*, 456 U.S. 107, 125 n. 28 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991).  This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts.  AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28.  Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id.*  In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal.  *Id.* Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted.  *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court.  To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his or her claim.  *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th

---

[1]  In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted.  785 F.2d at 135.  Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice."  *Id.* at 138-39; *Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002).

Cir. 2000).  Accordingly, a "petitioner must present his claim to the state courts as a
federal constitutional issue--not merely as an issue arising under state law." *Koontz v.
Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).  A petitioner can take four actions in his brief
which are significant to the determination as to whether a claim has been fairly presented
as a federal constitutional claim: "(1) reliance upon federal cases employing constitutional
analysis; (2) reliance upon state cases employing federal constitutional analysis; (3)
phrasing the claim in terms of constitutional law or in terms sufficiently particular to
allege a denial of a specific constitutional right; or (4) alleging facts well within the
mainstream of constitutional law." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003).

      A petitioner's procedural default, however, may be excused upon a showing of
"cause" for the procedural default and "actual prejudice" from the alleged error.  *See
Maupin*, 785 F.2d at 138-39.  "Demonstrating cause requires showing that an 'objective
factor external to the defense impeded counsel's efforts to comply' with the state
procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (*quoting
Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  Meanwhile, "[d]emonstrating prejudice
requires showing that the trial was infected with constitutional error." *Id*.  Where there is
strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is
weak, the actual prejudice requirement is not satisfied.  *See United States v. Frady*, 456
U.S. 152, 172 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219-20 (6th Cir. 1995); *Rust v.
Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994).  Prejudice does not occur unless petitioner
demonstrates "a reasonable probability" that the outcome of the trial would have been
different.  *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (*citing Strickler v.
Greene*, 527 U.S. 263, 289 (1999)).

      Although Petitioner originally identified only three grounds for habeas relief, he

identified two subsections in his first ground.[2]  The Court, for ease of analysis, will consider Petitioner to have raised four separate and distinct grounds.  Ground 1(a) relates to Petitioner's ineffective assistance of both trial and appellate counsel – trial counsel's failure to object to the jury instruction on self-defense; specifically, the duty to retreat, and appellate counsel's failure to properly raise the issue on appeal.  (Petition at 3-5.)  Ground 1(b) relates to Petitioner's claimed Sixth and Fourteenth Amendment violations as a result of the jury instruction regarding the burden of proof for Petitioner's claim of self-defense.  Ground 2 relates to claimed Fifth and Sixth Amendment violations caused when the trial court excluded critical testimony.  Finally, Ground 3 relates to claimed Fifth, Sixth and Fourteenth Amendment violations caused when trial counsel allegedly refused to allow Petitioner to testify.

Respondent argues that Grounds 1(b), 2 and 3 are procedurally defaulted as they were never presented to the state court.  As to Ground 1(a), Respondent argues that it is not cognizable in habeas corpus as it raises a matter of state law only.

### IV.  Analysis - Procedural Default

**A.  Ground 1(b)  Jury Instruction on the Affirmative Defense of Self-Defense;**
**Ground 2 -- Exclusion of Critical Testimony ;**
**Ground 3 – Petitioner Not Allowed to Testify at Trial.**

Ground 1(b) questions the trial court's instruction to the jury on how they were to determine whether Morris had met his burden to establish self-defense by a preponderance of the evidence.  The following instruction allegedly violated Petitioner's Sixth and Fourteenth Amendment rights:

> If the weight of the evidence is equally balanced or if you are unable to determine which side of an affirmative defense has the preponderance, then the Defendant has not established such affirmative defense.

---

[2] Petitioner uses letters A, B, and C.  He then divides Ground A into Subsections A and B  The Court will use numbers, as the Respondent did, and divide Ground 1 into two sections: thus, the Court will consider Grounds 1(a), 1(b), 2, and 3.

Tr. 200.

The Court here allowed the jury to conclude Petitioner had not met his burden as to the affirmative defense if it found that the evidence on the issue was equally balanced or if it could not determine which side had established the preponderance.  Petitioner argues that this impacted the overall burden of the state to prove he was guilty of the underlying crime beyond a reasonable doubt, thus violating his constitutional rights.

Ground 2 relates to the Petitioner's allegation that the trial court arbitrarily excluded critical testimony that was the crux of Petitioner's self-defense argument. (Petition at 12.)  Petitioner believes that the court excluded testimony by Ms. Godsey (Petitioner's girlfriend during the relevant time period) that the victim possessed a knife during the confrontation.  Petitioner argues that by excluding such testimony, his fundamental rights were so hampered that the verdict was not reliable.  (Petition at 13.)

As to Ground 3, Petitioner contends that his trial counsel refused to allow him to testify at trial.

Respondent contends that Petitioner's Ground 1(b), 2 and 3 are procedurally defaulted.  Petitioner concedes that these Grounds were not presented in state court. (Petition at 9, 11, 16.)  Failure to first pursue state remedies results in a procedural default which serves as a bar to federal review.  *See Lordi v. Ishee*, 384 F.3d 189, 194 (6th Cir. 2004), *reh'g enbanc denied* (2005); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). "Federal courts lack jurisdiction to consider a habeas petition claim that was not fairly presented to the state courts."  *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004).

Furthermore, the doctrine of *res judicata* procedurally bars claims that are first raised in a federal habeas petition.  *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998). The doctrine of *res judicata* applies to constitutional claims that could have been raised on direct appeal, but were not.  *Id.*  For federal habeas purposes, a "petitioner is considered to have waived the claims . . . 'unless he can demonstrate cause for the procedural default

9

and actual prejudice resulting from the alleged constitutional error.'" *Norris*, 146 F.3d at 322 (*quoting Rust*, 17 F.3d at 160).

### B. Cause

Petitioner contends that he can demonstrate "cause" to excuse the procedural defaults on these three grounds..

To show "cause" sufficient to excuse a procedural default, a petitioner must show that an objective factor external to the defense impeded counsel's efforts to comply with the state procedural rule.  *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  Moreover, habeas claims relying upon ineffective assistance of counsel grounds, must be presented to the state courts as an independent constitutional violation: "[A] claim of ineffective assistance" generally must "be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default."  *Id*. at 489.  ([W]e think that the exhaustion doctrine, which is 'principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings,' generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." (citation omitted.)

Petitioner, through the exercise of due diligence, could have presented his claims of ineffective assistance to the state courts.  He was represented by trial counsel on his direct appeal to the state appellate court; however, he was represented by the Ohio Public Defender's Officer on his direct appeal to the Ohio Supreme Court and on his Rule 26(B) Application to Reopen Appeal.  When represented by other counsel, Petitioner had an opportunity to present these claims, but did not do so.  Therefore, he shows no cause for such failure.  Given that the first prong of the *Norris* exception has not been satisfied, it is unnecessary to determine whether or not Petitioner suffered actual prejudice.  Petitioner's failure to raise these claims to the Ohio Supreme Court upon direct appeal or in seeking

10

post-conviction bars review by this Court.  *Rust*, 17 F.3d at 160.

### C.  Manifest Injustice

Next, Petitioner asserts that he is actually innocent and, therefore, his procedural default can be excused to prevent a "manifest injustice."  *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991).  Furthermore, he cites *Holsomback v. White*, 133 F.3d 1382, 1386 (1998) which states that "[a] deficiency is prejudicial where there is a reasonable probability that the result of the proceedings would have been different."  Conclusory statements are not enough – Petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial."  *Schlup v. Delo*, 513 U.S. 298, 324 (1995)*;  See Jones v. Bradshaw*, 489 F.Supp.2d 786, 807 (N.D.Ohio, 2007).  Here, Petitioner's claim of actual innocence is unsupported by any new reliable evidence.  He relies only on vague and conclusory statements which are insufficient to demonstrate a fundamental miscarriage of justice.  Petitioner simply rehashes the same evidence that was brought at trial.[3]  The threshold for "manifest injustice" is very high.  In *Murray*, the Supreme Court concluded that while certain circumstances may warrant the excusal of procedural default "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent[.]"  Only then may a court grant a petition where the claim otherwise is barred.  *Murray*, 477 U.S. at 496.  Consequently, this Court is procedurally barred from reviewing Petitioner's Ground 1(b), 2, and 3.

### V.  Merits Review

While Petitioner procedurally defaulted on Grounds 1(b), 2 and 3, Ground 1(a) was properly presented to the state courts for review.

---

[3]The State Appellate Court found overwhelming evidence of Petitioner's guilt.  (Exh. 12 at 5.)

### A.  Standard and Law

On April 26, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (the "Act" or the "AEDPA"), Pub. L. 104-132, 110 Stat. 1214 (1996). The legislation was aimed, *inter alia*, at "curb[ing] the abuse of the statutory writ of habeas corpus, and [was designed] to address the acute problems of unnecessary delay and abuse in capital cases."  H.R. Conf. Rep. No. 518, 104th Cong., 2d Sess. (1995), reprinted in 1996 U.S.C.C.A.N. at 944 *et seq.*

Title 28 U.S.C. § 2254, as amended by the AEDPA, provides in relevant part:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based upon an unreasonable determination of facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (as amended).

With respect to paragraph (d)(1), the phrase "clearly established Federal law, as determined by the Supreme Court of the United States" refers to Supreme Court holdings, not dicta.  In addition: Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.  *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000); *see also Miller v. Francis*, 269 F.3d 609, 613-14 (6th Cir. 2001); *Brumley v. Wingard*, 269 F.3d 629, 637-38 (6th Cir. 2001); *Magana v. Hofauer*, 263 F.3d 542, 546 (6th Cir. 2001); *Smith v. State of Ohio Dept. Of Rehab. & Corrections,* 463 F.3d

12

426, 431 (6th Cir. 2006), *reh'g and reh'g. en banc denied*; *Bird v. Hurst*, 110 Fed. Appx 474, 478 (6th Cir. 2004)(unpublished); *Hannah v. Conley*, 49 F.3d 1193, 1197 (6th Cir. 1995).

State court factual determinations are "presumed to be correct," and the party seeking habeas relief has the burden of rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001); *Brumley*, 269 F.3d at 637.  This presumption applies to factual findings of a state appellate court made from the trial court record.  *Brumley*, 269 F.3d at 637.

To establish ineffective assistance, a petitioner must demonstrate that his counsel's conduct was so below acceptable standards of representation that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment to the United States Constitution.  *See Strickland v. Washington*, 466 U.S. 668 (1984); *United States v. Bavers*, 787 F.2d 1022 (6th  Cir. 1985).  A petitioner also must demonstrate that a trial counsel's performance prejudiced the petitioner's defense to such an extent that it rendered the proceeding unfair.  *Id*.  To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.  In other words, a counsel's deficient performance must have "caused the defendant to lose what he otherwise would probably have won" and it must have been "so manifestly ineffective that defeat was snatched from the hands of probable victory."  *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Strickland*, 466 U.S. at 690.  Mere disagreements by a defendant with tactics or strategies employed by counsel are not enough to support a claim of ineffective assistance and there is a presumption that the challenged conduct of a petitioner's counsel was a matter of strategy.

13

*Id.* at 689; *see also United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

**B.  Ground 1(a)- Jury Instruction on Self-Defense as to the Duty to Retreat**

In Ground 1(a) Petitioner alleges ineffective assistance of both trial and appellate counsel – trial counsel's failure to object to the jury instruction on self-defense and appellate counsel's failure to properly raise the issue on appeal.  Petitioner suggests that the instruction as given implied a duty to retreat not required by the law.  The questioned instruction was given as follows:

> If the defendant had reasonable grounds and an honest belief that he was in imminent danger of unlawful force, and that the only means to protect himself was by the use of force, then he was justified even though he was mistaken as to the existence of the necessity to use force.

Tr. 196-97.

Under Ohio law, the duty to retreat did not apply to the facts of his case as deadly force was not involved.  However, Petitioner argues that the court's instruction, implied otherwise.  (Petition at 3).  Petitioner alleges that the jury instruction was so constitutionally infirm that it amounted to a Fourteenth Amendment violation.  He contends that the State Public Defender acting as appellate counsel should have raised the instruction issue on appeal as it pertained to trial counsel's performance.  (Petition at 4).  Petitioner did, through the State Public Defender, raise this issue in a Rule 26(B) Application to Reopen Appeal.  The Appellate Court denied the Application finding that trial counsel was not ineffective.  The Court also found that the trial court's jury instruction did not implicitly require a duty to retreat.  Lastly, it found that the evidence of Petitioner's guilt was overwhelming.  (Exh. 11.)  Petitioner appealed this decision to the Ohio Supreme Court which dismissed the appeal ruling that it did not involve any substantial constitutional question.  (Exh. 14.)

Counsel is ineffective only if he performed unreasonably and caused prejudice to the defendant.  *Strickland*, 466 U.S. at 687.  In fact, "[c]ounsel is constitutionally ineffective only if performance  below professional standards caused the defendant to lose

14

what he otherwise would probably have won."  *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).  Moreover, this court is limited by the AEDPA to considering whether the state appellate decision was contrary to or an unreasonable application of clearly established federal law.  28 U.S.C. § 2254(d)(1).  In its review of trial counsel's effectiveness, the Ohio Court of Appeals applied *Strickland*:

> Finally, in the third prong of his first proposed assignment of error, appellant asserts trial counsel was ineffective for failing to object to the trial court's instruction on self-defense as said instruction implied appellant had a duty to retreat.  As the legality of the court's instruction is the subject of appellant's second proposed assignment of error, and its resolution impacts the third prong of appellant's first assignment of error, we shall address said together.  In his second proposed assignment of error, appellant argues the trial court committed plain error in instructing the jury on the affirmative defense of self-defense.  Specifically, appellant maintains the standard OJI instruction implicitly creates a duty to retreat when there is no duty to retreat in situations involving non-deadly force; therefore, it was plain error for the trial court to give the instruction.  In support of his position, appellant relies upon State v. Maine, Washington App. No. 04CA46, 2005-Ohio-3742, in which the Fourth District Court of Appeals concluded the trial court's giving of a non-deadly force self-defense instruction patterned after the standard OJI resulted in a manifest miscarriage of justice.  Unlike the Fourth District, we do not find the trial court's instruction implicitly required a duty to retreat.  Assuming, arguendo, the jury did view the instruction as requiring appellant to retreat, we find the outcome of the trial clearly would not have been otherwise as the evidence of appellant's guilt was overwhelming.

> Appellant's application for reopening is denied.

(Exh. 11.)

This application of *Strickland* was neither contrary to nor an unreasonable application of federal law; consequently, Petitioner's ineffective counsel claim is without merit.

Turning to the jury instruction as given, this Court finds no constitutional violation.  The standard under which this Court reviews a habeas Petitioner's claim of an unconstitutional jury instruction is governed by the United States Supreme Court's decision in *Estelle v. McGuire*, 502 U.S. 62 (1991).  The *Estelle* Court found the only question for a court sitting in habeas review on this issue is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."

15

*Estelle*, 502 U.S. at 72.  Furthermore, *Estelle* directed courts to consider the instructions as a whole in the context of the trial record and inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution.  *Id*. (*quoting Boyde v. California*, 494 U.S. 370, 380 (1990)).

The state appellate court, in ruling on the Application to Reopen, found that the trial court's instruction did not implicitly require a duty to retreat.  The appellate court further stated: "Assuming, arguendo, the jury did view the instruction as requiring appellant to retreat, we find the outcome of the trial clearly would not have been otherwise as the evidence of appellant's guilt was overwhelming."   (Exh. 12 at 5.)

The Court finds that this instruction did not so infect the entire trial that Petitioner's conviction violates due process.  Also, the Court finds that the decision of the State Court of Appeals is not contrary to United States Supreme Court precedent nor is it an unreasonable determination of the facts in light of the evidence presented.

### VI.  Evidentiary Hearing

Generally, a habeas petitioner is entitled to an evidentiary hearing in federal court if the petition "alleges sufficient grounds for release, relevant facts are in dispute, and the state courts did not hold a full and fair evidentiary hearing." *Stanford v. Parker*, 266 F.3d 442, 459-460 (6th Cir. 2001) (*citing Wilson v. Kemna*, 12 F.3d 145, 146 (8th Cir.1994) (citation and internal quotation omitted)).  However, a petition may be summarily dismissed if the record clearly indicates that the petitioner's claims are either barred from review or without merit. *Id.*

In this case, upon review of the pleadings and transcripts, the procedural issues presented can be resolved from the record. An evidentiary hearing is, therefore, not required.

## VII.  Conclusion

For the foregoing reasons, the Magistrate Judge recommends Petitioner's petition

be DENIED.

                                                                 s/ Greg White

                                                            U. S. Magistrate Judge

Date:   June 20, 2008

## OBJECTIONS

**Any objection to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  See also *Thomas v. Arn*, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).**